Ray TAYLOR, a/k/a Ray Taylor, Jr.,
Appellant,

v.

UNITED STATES, Appellee.

No. 7203.

District of Columbia Court of Appeals.

Argued Nov. 13, 1973.

Decided Aug. 20, 1974.

Silas J. Wasserstrom, Washington, D. C., appointed by this court, for appellant. Michael L. Fayad, Washington, D. C., also appointed by this court, filed an appearance for appellant.

James N. Owens, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and John P. Hume, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, and KERN and HARRIS, Associate Judges.

REILLY, Chief Judge:

Appellant was found guilty by a jury of armed robbery and assault with a dangerous weapon in violation of D.C.Code 1973, §§ 22–2901 and 22–3202, and § 22–502, respectively. The trial court imposed sentences of three to nine years on the first count and one to three years on the second, the terms to run consecutively. Appellant assigns as error (1) the imposition of sentences prescribed by statute as penalties for these particular offenses in contradistinction to sentences under the Youth Corrections Act, as to both counts, and (2) his conviction of assault with a dangerous weapon, on the theory that such an assault, being a necessary element in the crime of armed robbery, was a "lesser included" offense. His conviction of armed robbery is not raised on appeal.

Appellant was 21 years old when convicted and thus within the scope of the Youth Corrections Act, 18 U.S.C. § 5005 et

seq. This statute provides trial judges with four different alternatives for sentencing offenders between the ages of 18 and 22. Under § 5010 these options include probation, commitments for rehabilitative treatment to special youth facilities, or sentence under the penalty prescribed by statute for the offense. A trial judge may exercise this last alternative under § 5010(d):

> If the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c), then the court may sentence the youth offender under any other applicable penalty provision.

At the time the appeal was argued in this court, a conflict existed in the federal circuits concerning whether the imposition of an adult sentence under § 5010(d) required an explicit finding by the trial court, supported by reasons on the record that the offender would not benefit from treatment under the subsections enumerated.

In Small v. United States, D.C.App., 304 A.2d 641, 644 (1973), where a prison sentence was imposed, rather than Youth Act treatment, it was held that the record must show not only that the sentencing judge was aware of defendant's eligibility under the Act and considered all the sentencing alternatives, but also " . . . must contain an explicit and reasoned determination that the defendant would *not* derive rehabilitative benefit from Youth Act treatment. . . . "

In this respect, this court adopted the construction of the Act enunciated by the Court of Appeals for this circuit in United States v. Coefield, 155 U.S.App.D.C. 205, 476 F.2d 1152 (1973) (en banc). We subsequently rejected an extension of this rule [1] whereby this circuit required that the stated reasons of the trial judge must "demonstrate a 'present and visible' rationality to Congressional objectives." In our

opinion, such construction of the Act would have subjected action reserved to the discretion of the sentencing judge to appellate review. Reed v. United States, D.C.App., 312 A.2d 775, 780 (1973).

In the case now before us, the transcript reveals that the court satisfied the first condition of the *Small* case. After learning appellant's age, the court inquired whether he had previously been sent to the Youth Center. Appellant said that he had spent nine months there on a charge of larceny. Based on this admission, together with a statement before it of appellant's prior record provided by the government, the court decided to obtain a normal presentence report instead of the more elaborate study obtainable under 18 U.S.C. § 5010(e).

Appellant contends, however, that the trial court failed to make an explicit, reasoned finding that appellant would derive no benefit from Youth Act treatment.

Subsequent to the presentation of arguments on this appeal, the Supreme Court on June 26, 1974, delivered an opinion resolving the conflict among the circuits, to which reference has been made. Its holding was that while an express finding of no benefit must be made on the record, the Act does not require that it be accompanied by supporting reasons. Dorszynski v. United States, —— U.S. ——, 94 S.Ct. 3042, 41 L.Ed.2d —— (1974). Accordingly, appellant's contention here must be appraised in the light of *Dorszynski*.

■ The record discloses that at sentencing defense counsel asked the court to reconsider sending appellant to the Youth Center. In response the court gave the following detailed account of appellant's past involvement with the police, the courts, and the correctional system.

The records I have here indicate that as a juvenile he had a charge of petty lar-

---

1. United States v. Phillips, 156 U.S.App.D. C. 217, 479 F.2d 1200 (1973); United

States v. Riley, 157 U.S.App.D.C. 27, 481 F.2d 1127 (1973).

ceny and was placed on probation. . . . That was in 1967. . . . Then in 1967 there was the charge of robbery, force and violence. The case was closed. Also in 1967 he was convicted of indecent assault, probation. In 1967 a robbery case, dismissed in absentia in 1968. Also in 1967[.] assault with a dangerous weapon[,] dismissed in absentia in 1968. Destroying private property, no disposition given. 1969, petty larceny—this is an adult record. He got $100.00, ninety days . . . suspended execution of sentence, one year probation.

In 1969, one month later, he pled guilty to two counts of petty larceny and for this offence he got three years probation under the Federal Youth Correction[s] Act. In October of 1970[,] petty larceny and assault, and again he was the recipient of the Youth Correction[s] Act[,] 5010–B. He got that in 2–12–71. On 1–29–71 there was a probation revocation, and he was committed. On 4–7–72[,] robbery holdup, gun; the case was no-papered. He was paroled on 5–12–72 to 11–23–76 and exactly less than two months later he was charged with the instant offense of armed robbery. He was also papered under the Controlled Substance Act on 12–25–72. This was continued until 3–2–73 for trial. . . . (Supp.R. 3,4.)

To hold that the foregoing did not constitute an explicit finding that appellant would not derive benefit from Youth Act treatment would be to exalt form over substance. The doctrine that the Youth Act necessitated the sentencing court to be explicit in this respect originated in appeals from sentences in cases where there was little or nothing in the record to indicate that the court considered the various alternatives available to it under that statute or gave any reasons for not utilizing them.

Here, the recommendation of defense counsel was based on the proposition that appellant would derive benefit from one of the more lenient alternatives available to the court under the Youth Act. Within this context, it was not incumbent upon the court to parrot the statutory words if it explained its grounds for rejecting the proposal.

The transcript reveals that the trial court concluded from the defendant's record that he had derived no rehabilitative benefit from either juvenile or Youth Corrections Act dispositions in the past, and decided to impose an adult sentence. It is plain that such an explanation for rejecting counsel's request was tantamount to a finding that no benefit within the comtemplation of the statute would be derived if such request were granted.

As the Supreme Court stated in *Dorszynski,* 94 S.Ct. at 3053:

. . . Literal compliance with the Act can be satisfied by any expression that makes clear the sentencing judge considered the alternative of sentencing under the Act and decided that the youth offender would not derive benefit from treatment under the Act.

In light of *Dorszynski,* appellant's contention that the trial court erroneously failed to supply reasons for his finding is without merit.

■ As to the conviction for assault with a dangerous weapon, the government concedes, and we agree, that on the facts of the instant case, this assault was a necessary part of the evidence needed to support the count of armed robbery. *See* Quick v. United States, D.C.App., 316 A.2d 875 (1974); Skinner v. United States, D.C.App., 310 A.2d 231 (1973); United States v. Inge, 494 F.2d 1102 (D.C.Cir. 1974); United States v. Anderson, 490 F.2d 785 (D.C.Cir. 1974); United States v. Johnson, 155 U.S.App.D.C. 28, 475 F.2d 1297 (1973); *cf.* Dixon v. United States, D.C. App., 320 A.2d 318 (1974). Accordingly, the conviction of assault with a dangerous

weapon, and the sentence based thereon, must be set aside.

Affirmed in part; reversed in part.

KERN, Associate Judge (concurring):

In Small v. United States, D.C.App., 304 A.2d 641, 643 (1973), we said:

> The requirement that a sentencing judge state explicitly on the record his determination whether a youth offender will derive rehabilitative benefit from Youth Act treatment is wholly consistent with our directive in past cases to trial judges with respect to other facets of a criminal proceeding "to enhance the record with clear evidence" so as to avoid the subsequent need on appeal "to reconstruct skimpy records or to fill the void in empty records on appeal." . . . The minutes taken by the sentencing judge to state expressly for the record his determination whether or not the defendant before him will derive rehabilitative benefit from the Youth Act will save months of litigation after sentence as to what the sentencing judge had determined and whether he complied with the Act.

In Dorszynski v. United States, —— U.S. ——, 94 S.Ct. 3042, 41 L.Ed.2d —— (1974), the Supreme Court (at 3044) concluded:

> [A]n express finding of no benefit must be made on the record, [but] the Act does not require that it be accompanied by supporting reasons.

The Court pointed out (at 3053):

> Appellate courts should not be subject to the burden of case-by-case examination of the record to make sure that the sentencing judge considered the treatment option made available by the Act.

In the instant case the trial court immediately after the verdict stated in open court (R. 279):

> He's [appellant] young enough; he didn't pull the trigger, so, maybe the Youth Center evaluation is the answer.

However, then the trial court, upon learning from appellant that he had already been at the Youth Center for a prior larceny conviction (R. 279), stated (R. 281):

> I'm not going to play God; I'm not going to string him along; no, no Youth Center.

Subsequently, at sentencing, the following colloquy between appellant's counsel and the court occurred (R. 3):

> MR. FAYAD: At this time I would request Your Honor to reconsider sending Mr. Taylor back to the Youth Center. The last time you indicated you didn't wish to do that, as Mr. Taylor was sent down there once.

> THE COURT: That is right.

Then, the trial court commented (R. 4, 5):

> In 1969, . . . he [appellant] pled guilty . . . and . . . got three years probation under the Federal Youth Correction Act. In October of 1970 . . . again he was the recipient of the benefits of the Youth Correction Act.

> .    .    .    .    .    .

> Mr. Taylor your opportunity to be rehabilitated will be in prison.

I conclude in this particular case, in which the sentence was imposed prior to *Small* and *Dorszynski,* that after a search of the record and a piecing together of words and phrases uttered to and by the sentencing judge he did comply with the Act. Henceforth, however, the trial court should be mindful of the Chief Justice's admonition, "An explicit finding that petitioner would not have benefited from treatment under the Act would have removed all doubt concerning whether the enlarged discretion Congress provided to sentencing courts was indeed exercised," *Dorzynski* at 3053, and should make such "no benefit" finding.